UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BILLY JOE JOHNSON,

     Plaintiff,

v.                                 Case No: 6:17-cv-414-Orl-41TBS

KAUFFMAN TIRE, INC.,

     Defendant.

_____

## <u>AMENDED REPORT AND RECOMMENDATION</u>[1]

     Pending before the Court is the parties' Joint Motion for Approval of Amended Unpaid Wages Settlement and Dismissal of Action *with Prejudice* (Doc. 22). Upon due consideration I respectfully recommend that the revised settlement agreement be **approved** and the motion be **granted.**

## I. Background

     Between March 30, 2015 and March 8, 2017, Plaintiff Billy Joe Johnson worked as a tire delivery driver for Defendant Kauffman Tire, Inc. (Doc. 5, ¶ 2; Doc. 20 at 4). He was paid $14 per hour for his services (Doc. 18 at 2, ¶ 7; Doc. 22 at 5). Plaintiff was required to clock in on arrival and clock out on departure from Defendant's tire warehouse (Doc. 1, ¶ 10). He alleges that Defendant automatically deducted thirty minutes from his work time each day for a lunch break (Doc. 20 at 4, Doc. 22 at 1-2). Plaintiff says he rarely took a lunch break and that he did not know how to inform Defendant to change its records to compensate him for the extra thirty minutes per day (Doc. 20 at 4, Doc. 22 at 1-2). In his

---

[1] The parties filed a joint motion for approval of their settlement of this FLSA case (Doc. 20), and on July 17, 2017, I entered my Report and Recommendation that the motion be denied (Doc. 21). On July 26, 2017, the parties submitted their Joint Motion for Approval of Amended Settlement Agreement (Doc. 22; Doc. 22-1). Because the parties have amended their agreement, my original Report and Recommendation (Doc. 21) is **WITHDRAWN**.

answers to the Court's interrogatories, Plaintiff said he is owed $4,571 in unpaid wages (Doc. 18, ¶ 7). Defendant denies knowing that Plaintiff worked through his lunch break and says that its policies clearly provide an avenue to report incorrect time entries or deductions (Doc. 22 at 5).

On July 17, 2017, I recommended that the district court reject the parties' settlement agreement because the list of beneficiaries was too broad. I found that "[i]n addition to Defendant, Plaintiff's release includes many other persons and entities. These non-parties are not identified, they have not signed the agreement, and no reason has been provided for their inclusion in the settlement." (Doc. 21 at 7). I advised the parties that I could not "recommend approval of this agreement unless [they] first demonstrate that Defendant provided Plaintiff a complete list, by name and address, of everyone included in the definition of the 'Releasees' so that he could make a knowing and intelligent decision whether to sign the settlement agreement." (Id.).

I also recommended that the settlement agreement be rejected because the parties executed a separate agreement, the terms of which were not disclosed, to settle Plaintiff's FLSA retaliation claim ("Second Agreement") (Id. at 7-8). I said the parties' failure to disclose the Second Agreement made it impossible for the Court to determine whether the proposed unpaid wages settlement was contaminated by efforts to resolve Plaintiff's retaliation claim (Id.).

The parties have voided their original settlement agreement and submitted an amended agreement to the Court for approval (Doc. 22). In the amended agreement, the parties identify the corporate entity and individuals to be released and invite the Court to conduct an *in camera* review of the Second Agreement (Id.).

## II. Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claim is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under

the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is a "fair and reasonable resolution of a bona fide

dispute" of the FLSA issues. <u>Lynn's Food</u>, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise of issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." <u>Id.</u> at 1354. The nature of this lawsuit prompts the district court's review of the parties' settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including <u>Fiber Moreno v. Regions Bank</u>, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

### III. Damages

The parties agree that under their settlement agreement, Plaintiff will be fully compensated for the time he actually worked. Full compensation is, by definition, fair and reasonable. <u>See</u> <u>Ford v. Metro Corral Partners</u>, No. 6:07-cv-1516-Orl-19KRS. 2008 WL 4936475, at *1 (M.D. Fla. Nov 17, 2008) (Because Ford will recover the full amount of FLSA compensation arguably due to him, the settlement is necessarily a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions'") (quoting <u>Lynn's Food</u>, 679 F.2d at 1354).

### IV. Liquidated Damages

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages … in an additional equal amount as liquidated damages."). The award of liquidated damages in an amount equal to the amount of back pay is mandatory unless the employer can show that its actions were taken in good faith[2] and that it had reasonable

---

[2] The FLSA has established a good faith defense to the award of liquidated damages:

grounds for believing its actions did not violate the statute. <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515 F.3d 1150, 1164 (11th Cir. 2008) (citing <u>Spires v. Ben Hill Cnty.</u>, 980 F.2d 683, 689 (11th Cir. 1993) ("If a court determines that an employer has established a good faith defense, it may, 'in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 ....'")).

"To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it." <u>Davila v. Menendez</u>, 717 F.3d 1179, 1185 (11th Cir. 2013) (quoting <u>Dybach v. State of Fla. Dep't of Corr.</u>, 942 F.2d 1562, 1566 (11th Cir. 1991)). "'What constitutes good faith on the part of [an employer] and whether [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [Act] are mixed questions of fact and law ... [That test has] both subjective and objective components.'" <u>Dybach</u>, 942 F.2d at 1566; <u>see</u> 29 C.F.R. § 790.22. When the employer fails to prove that it acted in both subjective and objective good faith, the award of liquidated damages is mandatory. <u>Davila</u>, 717 F.3d at 1186.

An employee "may not negotiate away liquidated damages or back wages in the interest of achieving a settlement." <u>Hogan v. Allstate Beverage Co.</u>, 821 F. Supp. 2d 1274, 1281 (M.D. Ala. 2011); <u>Dees v. Hydradry, Inc.</u>, 706 F. Supp. 2d 1227, 1236 (M.D. Fla. 2010); <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 70 (1945) (An employee cannot

---

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act … the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [§ 216(b)].

29 U.S.C. § 260.

waive his right to liquidated damages in an FLSA settlement agreement when there is no genuine dispute about the employee's entitlement to liquidated damages).

Here, there is a genuine dispute concerning Plaintiff's right to receive liquidated damages. Because he was a truck driver, Defendant would not know if Plaintiff took a lunch break while on the road. Defendant had a procedure to correct employee hours which Plaintiff did not take advantage of, and Plaintiff's failure to report that he was working through lunch was a violation of Defendant's policies (Doc. 22 at 5). Under these circumstances, I find that Defendant has a persuasive argument that it acted in objective and subjective good faith. Therefore, I find that the parties' failure to include liquidated damages in their settlement is not fatal to their agreement.

## V. Attorney's Fees

Where, as here, the plaintiff's attorneys' fee is agreed upon separately without regard to the amount paid to the plaintiff, "unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Mgmt. Co., 715 F. Supp. 2d 1227, 1228 (M.D. Fla. 2009). I find no reason to question the reasonableness of the attorney's fee here.

## VI. Beneficiaries of the Settlement Agreement

The parties have identified the entity and individuals to be released as part of this agreement (Doc. 22-1 at 2-3). Therefore, I respectfully recommend that the Court find the release provision to be sufficiently limited in scope and the agreement to be fair and reasonable.

## VII. Second, Undisclosed Settlement Agreement

There is a consensus among courts (and judges here in the Middle District) that Lynn's Food's scrutiny requirement does not extend to non-back wage claims and the parties need not disclose the terms of those separate agreements. The parties are free to settle other claims (including FLSA retaliation) outside of the court's purview as long as the separate settlement agreement does not contaminate the FLSA agreement. See Owens v. Advocator Grp., LLC, Case No, 6:16-cv-2149-Orl-2GJK. 2017 U.S. Dist. LEXIS 111545, at *8 (M.D. Fla. July 11, 2017) (citing Johnson v. Overdrive Sys. II, Inc., Case No. 6:15-cv-938-Orl-41DAB, 2016 U.S. Dist. LEXIS 81192, at * 5 (M.D. Fla. June 1, 2016), adopted at, 2016 U.S. Dist. LEXIS 81189) ("the Court assumes that Plaintiff has agreed to either forego her retaliation claim or release it for a minimal amount. Regardless ... the Court does not need to review the parties' settlement of Plaintiff's other claims, provided its terms do not serve to contaminate the Agreement as to the FLSA claims."); see also Yost v. Wyndham Vacation Resorts, Case No. 6:10-cv-1583-Orl-36GJK, 2012 U.S. Dist LEXIS 49277, adopted at, 2012 U.S. Dist. LEXIS 49275 (M.D. Fla. Apr. 9, 2012) (citing Coleman v. The Golf Channel, Inc., No. 6:09-cv-1254-Orl-DAB (M.D. Fla. May 20, 2010)); McQuillan v. Lochner, Case No. 6:12-cv-1586-Orl-36TBS, 2013 U.S. Dist. LEXIS 167130, at *7 (M.D. Fla. Nov. 1, 2013); Hernandez v. Iron Container, LLC, Case No. 13-22170-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 19781, at *4-5 (S.D. Fla. Feb. 18, 2014). There is no evidence suggesting that the Second Agreement contaminated Plaintiff's wage claim. Therefore, I recommend the district judge accept the amended settlement agreement.

## VIII. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Court

**GRANT** the joint motion for approval of the settlement agreement (Doc. 22).

## IX. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 28, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record